UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH FUIMO,

                Plaintiff,

v.                                                      3:11-CV-1406
                                                      (GTS)

MICHAEL ASTRUE, Comm'r of Soc. Sec.,

                Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

LACHMAN & GORTON                     PETER A. GORTON, ESQ.
 Counsel for Plaintiff
1500 East Main Street
P.O. Box 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.         JEREMY A. LINDEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Joseph Fuimo ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 14, 18.) For the reasons set forth below, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

I.      **RELEVANT BACKGROUND**

    A.      **Factual Background**

Plaintiff was born on February 12, 1979. He completed the seventh grade in special education. Most recently, Plaintiff worked at a truck stop as a porter and a janitor. Generally, Plaintiff's alleged disability consists of anger issues, anxiety, arthritis, bipolar disorder, carpal tunnel syndrome, depression, low intelligence, paranoia, and social phobia. His alleged disability onset date is January 1, 2000.

    B.      **Procedural History**

On July 31, 2009 Plaintiff applied for Supplemental Security Income. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 24, 2010, Plaintiff first appeared before the ALJ, Barry E. Ryan. At that time, the ALJ heard some testimony from Plaintiff and entered a continuance so that Plaintiff could obtain additional records related to his ongoing treatment. (T. 23-31.) Plaintiff appeared before the ALJ a second time, but the hearing was rescheduled due to Plaintiff's counsel's illness. (T. 32-35.) Plaintiff appeared before the ALJ a third and final time, and a hearing was held during which the remainder of Plaintiff's testimony was heard. (T. 36-56.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on June 21, 2011. (T. 6-22.) On November 2, 2011, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

    C.      **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 11-17.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. (T. 11.) Second, the ALJ found that Plaintiff's

depression and reading disorder are severe impairments. (T. 11-12.) Third, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 12-13.) The ALJ considered listings 12.04 and 12.05. (*Id*.) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all exertional levels as well as understand, carry out, and remember simple instructions, respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting. (T. 14-16.) Fifth, and finally, the ALJ determined that there are jobs that exist in the national economy that Plaintiff can perform. (T. 17.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to properly assess the medical opinions of Drs. Robert Russell, Ed.D., Dennis M. Noia, Ph.D., and R. Altmansberger, M.D. (Dkt. No. 14 at 10-15 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in failing to find that Plaintiff's anxiety disorder and/or borderline intellectual functioning are severe impairments. (*Id.* at 15-16.) Third, and finally, Plaintiff argues that the ALJ erred when he failed to properly assess Plaintiff's credibility. (*Id.* at 16-22.)

### B.     Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ properly assessed the severity of Plaintiff's impairments. (Dkt. No. 18 at 3-8 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly evaluated the medical evidence in determining Plaintiff's RFC. (*Id.* at 9-18.) Third, and finally, Defendant argues that the ALJ properly assessed Plaintiff's credibility. (*Id.* at 18-22.)

### III. RELEVANT LEGAL STANDARD

#### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

> B.      **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

5

## IV.     ANALYSIS

### A.    Whether the ALJ Erred in Failing to Properly Assess the Medical Opinions of Doctors Robert Russell, Ed.D., Dennis M. Noia, Ph.D., and R. Altmansberger, M.D.

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 18 at 10-15 [Pl.'s Mem. of Law].)  The Court would only add the following analysis.

Plaintiff argues generally that the "ALJ's assessment of each and every medical opinion and medical record is erroneous[,]" and that the ALJ erred by assessing only those portions of the record that are favorable to his decision, and by failing to explain his decision with sufficient specificity so that the Court can determine whether it is correct.  (Dkt. No. 14, at 11, 15 [Pl.'s Mem. of Law].

The ALJ considers every medical opinion of record.  *See* 20 C.F.R. § 416.927(c).  Where, as here, there is no treating source opinion, the ALJ evaluates each medical opinion based on factors such as the examining relationship, whether the opinion comes from a specialist, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole.  *See id.*  In support of Plaintiff's blanket argument that the ALJ's assessment of the medical opinions is erroneous, Plaintiff addresses only the ALJ's assessment of the opinions of Drs. Russell, Noia and Altmansberger.

Regarding the ALJ's assessment of Dr. Noia's opinion, Plaintiff identifies three alleged errors: (1) the ALJ "accepted" Dr. Noia's opinion, but did not include Dr. Noia's findings that Plaintiff has difficulty with stress and is only able to interact with others moderately well, in determining Plaintiff's RFC; (2) the ALJ "accepted" Dr. Noia's opinion but despite Dr. Noia's diagnosis of anxiety disorder, does not find that Plaintiff's anxiety disorder is a severe

impairment; and (3) the ALJ "rejected" Dr. Noia's findings that the results of his examination are consistent with Plaintiff's allegations instead of re-contacting Dr. Noia for clarification.

      Plaintiff's argument that the ALJ erred in failing to re-contact Dr. Noia for an explanation regarding the apparent misstatement that his examination results are consistent with the Plaintiff's allegations is misplaced.  To be sure, there is an inconsistency between Dr. Noia's examination results and Plaintiff's allegations of symptoms.  Nonetheless, as Defendant correctly points out, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete.  Where, as here, the source's opinion includes all of the factors set forth in 20 C.F.R. § 416.913, there is no indication that further contact will result in additional information, and therefore re-contact is not necessary.  *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009).

      Plaintiff's argument that the ALJ erred in failing to find that Plaintiff's anxiety disorder is a severe impairment, despite accepting Dr. Noia's diagnosis of such an impairment, will be discussed in Point IV.B. of this Decision and Order.

      Plaintiff's final argument that it was error for the ALJ to fail to address Dr. Noia's findings that Plaintiff has difficulty with stress and is only able to interact with others moderately well in determining Plaintiff's RFC has merit.  To be sure, the entirety of Dr. Noia's opinion is that vocationally, Plaintiff is capable of: (1) understanding and following simple instructions and directions; (2) performing simple and some complex tasks with supervision and independently; (3) maintaining attention and concentration for tasks; (4) regularly attending to a routine and maintaining a schedule; (5) learning new tasks; (6) making appropriate decisions, and (7) relating and interacting moderately well with others.  Dr. Noia further noted that Plaintiff appears to be having difficulty dealing with stress.  (T. 306.)  The ALJ's conclusion that Plaintiff

"retains the [RFC] to perform the full range of work at all exertional levels as well as understand, carry out, and remember simple instructions" is generally supported by Dr. Noia's opinion.  (T. 16.)  However, the ALJ's determination that Plaintiff retains the RFC to "respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting" is not supported by Dr. Noia's opinion that Plaintiff can interact only moderately well with others, and that he has difficulty dealing with stress.  Because the ALJ failed to address Dr. Noia's opinion in this regard, remand is appropriate.  *See Wood v. Comm'r of Soc. Sec.*, No. 06-CV-157, 2009 WL 1362971, at * 5 (N.D.N.Y. May 14, 2009).

Similarly, Plaintiff argues that the ALJ erred in failing to address Dr. Altmansberger's opinion that Plaintiff is moderately limited in maintaining concentration, persistence or pace.  (T. 328.)  In addition, the Court notes that while Dr. Altmansberger's functional capacity assessment indicates that vocationally, Plaintiff appears capable of (1) following, understanding, and remembering simple instructions and directions; and (2) performing simple and complex tasks independently, he also notes that Plaintiff was previously fired from his job due to anger problems and that he feels anxious around other people and has no friends.  Accordingly, remand is appropriate so that the ALJ can address these limitations in determining Plaintiff's RFC.  *See Wood*, 2009 WL 1362971, at *5.

Finally, regarding the opinion of Dr. Russell, Plaintiff argues that his examinations were the most extensive and detailed, and that he was the only "completely neutral" examiner, having assessed Plaintiff first for VESID, and a second time for Broome County.  Plaintiff argues that in spite of this, the ALJ's only discussion of Dr. Russell's extensive testing and examination is his conclusion that "[n]o weight has been given to Mr. Russell's statement that the claimant had a permanent disability as this is an issue reserved for the Commissioner."  (T. 16.)  To be sure, the

ALJ was correct to assign no weight to Dr. Russell's conclusion that Plaintiff is disabled, as federal regulations provide that such determinations are reserved for the Commissioner.  *See Gladden v. Comm'r of Soc. Sec.*, 337 F. App'x 136, 138 (2d Cir. 2009) (citing 20 C.F.R. § 416.927(e)(1)).  Moreover, the ALJ did rely on Dr. Russell's intelligence test results to decide that Plaintiff's reading disorder is severe, but that it does not meet or equal Listing 12.05.  (T. 12-13.)  In any event, when reviewing the ALJ's decision, it is important to keep in mind that

> [t]he ALJ is not required to mention or discuss every single piece of evidence in the record. Where the evidence of record permits the court to glean the rationale of an ALJ's decision, the ALJ is not required to explain why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. Moreover, although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate that it was not considered.

*Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y.2005) (citations and quotations omitted).  Therefore, the court may not assign error to the ALJ's conclusions simply because the he did not discuss Dr. Russell's examination notes and findings, as long as his conclusions are supported by substantial evidence.  Here, because remand is required so that the ALJ may assess Plaintiff's limitations in the area of social functioning, the Court directs that the ALJ also discuss his evaluation of Dr. Russell's examination findings and opinion in that regard. For example, the ALJ should address Dr. Russell's opinion that Plaintiff's impairments are "likely to cause significant dysfunction on any job where he needs to interact with others[,]" and that Plaintiff will have "difficulty understanding what is expected of him and following directions in an efficient manner."  (T. 267.)

> B. **Whether the ALJ Erred in Failing to Find that Plaintiff's Anxiety Disorder and/or Borderline Intellectual Functioning are Severe Impairments**

After carefully considering the matter, the Court answers this question in the affirmative regarding Plaintiff's anxiety disorder, generally for the reasons stated in Plaintiff's memorandum of law, but finds the error is harmless. (Dkt. No. 14, at 15-16 [Pl.'s Mem. of Law].) The Court answers this question in the negative regarding Plaintiff's borderline intelligence functioning, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18, at 6-7 [Def.'s Mem. of Law].) The Court would only add the following analysis.

At step two of the sequential analysis, the ALJ first acknowledged Plaintiff's alleged impairments, including anger issues, anxiety, arthritis, bipolar disorder, carpal tunnel syndrome, depression, low intelligence testing, paranoia and social phobia. (T. 11.) The ALJ concluded that Plaintiff's depression and "reading disorder" are severe impairments. (T. 12.) However, the ALJ found that the record evidence contains no laboratory findings that would support a conclusion that Plaintiff's carpal tunnel syndrome or arthritis are severe. The ALJ further found that although the record shows diagnoses of anxiety disorder, bipolar disorder, phobia and paranoid personality disorder, there are few, if any, clinical finding to support those diagnoses, which appear to have been based on Plaintiff's report of symptoms. Finally, the ALJ noted that the record shows no evidence that Plaintiff has been treated for any medically determinable impairment related to his reported anger issues. (*Id*.) Accordingly, the ALJ generally addressed each of Plaintiff's alleged impairments.

Plaintiff argues that the ALJ erred in failing to find that Plaintiff's anxiety and "borderline intelligence functioning" are severe impairments. (Dkt. No. 14, at 15-16 [Pl.'s Mem. of Law].) Concerning the latter, the Court notes that the record evidence supporting Plaintiff's

argument that his "borderline intelligence functioning" is severe mirrors that upon which the ALJ relied in concluding that Plaintiff's "reading disorder" is severe. (*Compare id.*, *with* T.11.) Accordingly, the Court finds no error in this regard.

In support of Plaintiff's argument that the ALJ erred in failing to find that his anxiety disorder is a severe impairment, Plaintiff correctly notes that the record includes symptoms and diagnoses of anxiety. However, the analysis does not end there. When applying the "special technique" used to determine whether an impairment is severe, the ALJ must first decide whether the claimant has a medically determinable impairment. After that threshold is met, the ALJ must then evaluate the rate of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 247 (N.D.N.Y. 2010). Each of the first three areas is rated on a scale of "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The fourth area is rated on a scale of "[n]one, one or two, three, four or more." *Id.* "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265, 266 (2d Cir.2008)).

Here, the ALJ concluded that Plaintiff has mild limitations in (1) activities of daily living, (2) social functioning and (3) concentration, persistence, or pace. (T. 13.) The ALJ further concluded that Plaintiff has no episodes of decompensation. (*Id.*) Regarding this step of the "special technique," Plaintiff argues that the ALJ erred only insofar as he failed to find that Plaintiff is limited in dealing with others. (Dkt. No. 14, at 16 [Pl.'s Mem. of Law].)

The ALJ did conclude that Plaintiff is mildly limited in maintaining social functioning, which is supported by Dr. Altmansberger's findings. (T. 328.) However, the ALJ failed to address Dr. Noia's opinion that Plaintiff "appears to be able to relate to and interact *moderately* well with others." (T. 306) (emphasis added). Moreover, the ALJ failed to address Dr. Altmansberger's finding that Plaintiff is moderately limited in maintaining concentration, persistence or pace. Accordingly, the ALJ's conclusion that Plaintiff's anxiety disorder is not a severe impairment is not supported by substantial evidence.

In any event, the Court notes that the ALJ did not deny benefits based on the lack of a severe impairment. Since the ALJ was required to considered all of Plaintiff's impairments after step two of the sequential analysis, even those that are not severe, *see* 20 C.F.R. § 404.1523, any error associated with the ALJ's finding that Plaintiff's anxiety disorder is not severe was harmless. *See Ellis v. Comm'r of Soc. Sec.*, No. 11-CV-2305, 2012 WL 5464632, at *5 (N.D.N.Y. Sept. 7, 2012).

### C.     Whether the ALJ Erred in Failing to Properly Assess Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 14, at 16-22 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012

WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Plaintiff argues that the ALJ failed to consider each of the above factors, instead relying solely on allegations of daily activities that are irrelevant to Plaintiff's mental RFC.

To be sure, the ALJ considered Plaintiff's testimony that he has anger issues, depression, and difficulty being in large groups of people. In addition, the ALJ considered Plaintiff's testimony that his daily activities included dressing, bathing, grooming himself, helping around the house, playing with his children, taking his children to school, shopping with his girlfriend, spending time with his mother, and getting along with his neighbors. The ALJ concluded that

Plaintiff's allegations of symptoms are only partially credible to the extent they are inconsistent with the evidence of record. (T. 15.)

However, the ALJ failed to address Plaintiff's allegations that he gets along with his neighbors because he keeps to himself and generally stays inside his house, does not go out alone, lost his job due to his temper, and stays in the car while his girlfriend does the shopping. Because the ALJ did not specifically address Plaintiff's allegations regarding his limitations in social interaction, especially considering that his limitations in that regard are supported by other evidence in the record, remand is appropriate.

ACCORDINGLY, it is

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED** in part and **DENIED** in part; and it is further

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED** in part and **DENIED** in part; and it is further

ORDERED that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: December 19, 2012
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge